UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGIC LINK GARMENT LTD.,<br>Plaintiffs,<br>v.<br>THIRDLOVE, INC.<br>Defendants. | Case No. 4:18-cv-7366-PJH (KAW)<br><br>**ORDER REGARDING DISCOVERY LETTERS**<br><br>Re: Dkt. Nos. 71, 73 |

Plaintiff Magic Link Garment Ltd. filed the instant suit against Defendant ThirdLove, Inc., alleging breach of contract and misappropriation of trade secrets and proprietary materials. (First Amended Compl. ("FAC") at 1, Dkt. No. 9.) Defendant has filed counterclaims, alleging that Plaintiff's products were defective and that Plaintiff has wrongfully interfered with Defendant's business relationships with third-parties. (Def.'s Counterclaims ¶¶ 1-2, Dkt. No. 22.)

Pending before the Court are two identical discovery letters concerning Defendant's interrogatories and requests for production ("RFP"), filed on October 11 and 15, 2019.[1] (Discovery Letters, Dkt. Nos. 71, 73.)

## I. BACKGROUND

Plaintiff is a manufacturer and designer of custom products, including women's undergarments. (FAC ¶ 9.) Defendant is a bra and women's underwear company that sells its products online. (Def.'s Counterclaims ¶ 1.) Around 2012 or 2013, Defendant contracted with

---

[1] If the October 15, 2019 duplicate letter was erroneously filed, and the parties intended to file a new discovery letter regarding a separate discovery dispute, any such letter would be untimely if it concerned fact discovery because the fact discovery cut-off was October 4, 2019. (*See* Dkt. No. 70; N.D. Cal. Civil Local Rule 37-3 ("Where the Court has set separate deadlines for fact and expert discovery, no motions to compel fact discovery may be filed more than 7 days after the fact discovery cut-off . . . .").)

Plaintiff to produce bras and other undergarments. (FAC ¶ 10; Def.'s Counterclaims ¶ 8.) The parties never entered into a master agreement; instead, Defendant would place purchase orders ("PO"), and Plaintiff would produce and ship the products under the specific invoices. (FAC ¶ 12; Def.'s Counterclaims ¶ 10.)

On December 21, 2017, Plaintiff sent PO #542 for TL 50A bras. (Def.'s Counterclaims ¶ 13; Joint Case Management Conference St. ("CMC St.") at 1.) Defendant began receiving the product in 2018, but alleges that the product was of significantly worse quality. (Def.'s Counterclaims ¶ 13.) Defendant also alleges that Plaintiff had started subcontracting the manufacture of its products to third-parties, which was a breach of the agreements between the parties. (Def.'s Counterclaims ¶¶ 15-16.) Plaintiff alleges that there were no such problems with its product, and that Defendant asserted such problems as pretext to not pay for Plaintiff's product that Defendant had accepted and sold to its customers. (CMC St. at 2.) Defendant then sought to cancel other POs (PO #619, 620, 624, 625, 626, 627, 629, 630, 631, 632, and 633) under which Plaintiff had already completed tens of thousands of products. (*Id.*; *see also* FAC ¶ 15.) Defendant also withheld payment on outstanding invoices and stopped ordering product from Plaintiff. (Def.'s Counterclaims ¶ 16.)

Defendant alleges that in response, Plaintiff "embarked on a campaign against" Defendant. (Def.'s Counterclaims ¶ 17.) For example, Defendant had a relationship with V Shapes Moulders Ltd. ("VSM"), a manufacturer of foam cups for bras. (Def.'s Counterclaims ¶ 18.) Defendant asserts that personnel from Plaintiff informed personnel from VSM that Defendant "was delinquent in its payments, without disclosing the quality problems that had led [Defendant] to withhold payment from [Plaintiff]." (Def.'s Counterclaims ¶ 20.) Defendant also asserts that Plaintiff urged VSM to stop shipping bra cups for Defendant, resulting in VSM stopping shipment of its products to Defendant's manufacturers. (Def.'s Counterclaims ¶ 21.)

## II.  LEGAL STANDARD

Under Rule 26, in a civil action, a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy,

the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Additionally, the court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

### III. DISCUSSION

#### A. Subcontracting

First, Defendant seeks information about Plaintiff's subcontracting of Defendant's products. (Discovery Letters at 1.) Defendant asserts that subcontracting was not permitted, and was one of the reasons Defendant withheld payment and rejected products from Plaintiff. (*Id.*; *see also* Def.'s Counterclaims ¶¶ 15-16.) Defendant further states that there is "extensive evidence" of Plaintiff's representations that it would not subcontract Defendant's products, but that Plaintiff admitted in deposition and its discovery responses that some of Defendant's products were made by subcontractors. (*Id.* at 1-2.) Defendant also points to pictures of Defendant's products being produced at one of Plaintiff's subcontractors. (*Id.* at 2.)

Plaintiff responds that there is no evidence that Plaintiff agreed not to subcontract, and that the allegedly defective products were manufactured at Plaintiff's Cambodia facility, rather than the subcontractor depicted in Defendant's pictures. (Discovery Letters at 3.) Plaintiff also argues that no discovery on this topic should be permitted because Defendant failed to produce the pictures – which include five smartphone videos and over 100 photographs, taken on January 24, 2018 – until October 9, 2019, five days after fact discovery cut off. (*Id.* at 2.)

The Court finds that information about Plaintiff's subcontracting of Defendant's products is discoverable, to the extent it concerns product produced under POs that are at issue in this litigation. Even if the product at issue did not include the allegedly defective products produced under PO #542, Defendant has asserted that it rejected or canceled product under *other* POs due to

the subcontracting issue. (Def.'s Counterclaims ¶¶ 15-16 (referring to the withholding of payment on multiple invoices due to the subcontracting issue).) Additionally, while Plaintiff argues that it does not have to disprove the existence of an agreement not to subcontract to prove its affirmative case, such information goes to Defendant's case, whether as part of its counterclaims or in defending against Plaintiff's breach of contract case. (*See* Discovery Letters at 3.)

As to the January 24, 2018 pictures, the Court finds that the late production does not warrant preventing Defendant from obtaining discovery on the issue. Rather, the appropriate remedy is to exclude such pictures from trial. This is particularly the case where Defendant has failed to provide any explanation for why it withheld such evidence until after the fact discovery cut off and the depositions of individual who was depicted in the pictures.[2] (*See* Discovery Letters at 2-3.)

### B. Communications between Plaintiff and VSM

Second, Defendant seeks communications between Plaintiff and VSM from June 1, 2018 onwards. (Discovery Letters at 3-4.) Defendant contends this discovery is directly relevant to its interference, injurious falsehood, and unfair competition claims. (*Id.* at 4.) Plaintiff responds that it has reviewed its files but does not believe any are related to the alleged interference claim, as they instead concern communications between lower level business personnel about the delivery of cups and other products. (*Id.*) Plaintiff further contends that any communications between Plaintiff's and VSM's principals would have occurred either in person or orally. (*Id.*)

The Court finds that the communications between Plaintiff and VSM from June 1, 2018 onwards through November 1, 2018, the date Defendant's counterclaims were filed, is discoverable. As Defendant states, such production goes directly to Defendant's counterclaims regarding Plaintiff's alleged interference with Defendant's relationship with VSM. (*See* Def.'s Counterclaims ¶¶ 20-21.) Further, while Plaintiff focuses on the communications between Plaintiff's and VSM's principals, Defendant does not allege that the communications at issue were

---

[2] While Defendants state they would allow Plaintiff to re-open the deposition of the individual in the pictures, this would require Plaintiff to incur the attorney's fees and costs required for further deposition testimony. (*See* Discovery Letters at 2.) Such attorney's fees and costs could have been avoided if Defendants had timely produced the pictures.

4

only between the principals; rather, Defendant alleges that the communications were between personnel. (Discovery Letters at 4; Def.'s Counterclaims ¶ 20.)

### C. Production Capacity

Finally, Defendant seeks information regarding Plaintiff's production capacity. (Discovery Letters at 4.) Defendant argues that because Plaintiff seeks all of its lost profits from Defendant's cancellation of certain orders, Plaintiff will have to demonstrate that it actually had the capacity to produce product for those cancelled orders. (*Id.*) Defendant asserts that Plaintiff did not in fact have such capacity because it admitted in discovery that Defendant's orders often exceeded its capacity. (*Id.*) Further, Defendant allegedly replaced cancelled orders with orders for other products. Thus, if Plaintiff's capacity was limited, such that it could not have produced both the cancelled orders and the replacement work orders, Plaintiff would not be able to seek damages for the entirety of the cancelled orders. (*Id.* at 5.) Instead, it could only seek lost profits from the portion of the cancelled orders that were not replaced by other orders.

Plaintiff responds that Defendant's replacement products were for fewer units than those it cancelled. (Discovery Letters at 5.) Therefore, "[t]here is no need to examine potentially thousands of documents concerning what [Plaintiff] was making (including for nonparties) when utilizing its many production lines in its China facility to determine [Defendant] did not order what it said it was going to order." (*Id.*) Rather, Plaintiff's lost profits can be calculated "based on the stated purchase price in the canceled POs compared to what [Plaintiff's] costs would have been." (*Id.*)

The Court finds that the production capacity is discoverable, as it appears Plaintiff is seeking the entirety of its lost profits for the cancelled orders. (*See* Discovery Letters at 5.) If, as Defendant argues, Plaintiff was not able to produce *both* the product for the cancelled orders *and* the replacement orders, it is not clear its damages would be for the entirety of the cancelled orders. Rather, its damages would be limited to the difference between the profits of the cancelled orders and the replacement orders, in the event Plaintiff only had the production capacity to satisfy one or the other (or some proportion thereof). Therefore, information about production capacity is relevant to the damages calculation.

5

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS Plaintiff to produce within fourteen days of this order: (1) information regarding its subcontracting, to the extent it relates to product produced under POs that are at issue in this case; (2) communications between Plaintiff and VSM from June 1, 2018 through November 1, 2018; and (3) information regarding its production capacity.

The Court further finds that Defendant is precluded from using the January 24, 2018 pictures due to its failure to timely produce the pictures prior to the fact discovery cut off.

IT IS SO ORDERED.

Dated: October 23, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge